# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID SADOWSKI, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 16-539 |
| ) | |
| v. ) | Judge Cathy Bissoon |
| ) | |
| ALLEGHENY LUDLUM, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 29) will be granted.

**BACKGROUND**[1]

Plaintiff has filed this lawsuit against his former employer, alleging that he was terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. (Am. Compl. (Doc. 5) at ¶ 56). Plaintiff began his employment with Defendant in 1974, holding various positions within the company before being promoted to Director of Supply Chain and Planning in 2010, the position he held until his termination in October 2014. (Def.'s Concise Stmt. of Undisputed Material Facts (Doc. 31) at ¶¶ 9-10, 15, 17; Pl.'s Resp. to Def.'s Concise Stmt. of Undisputed Material Facts (Doc. 39)

---

[1] The factual background is derived from the undisputed evidence of record, and the disputed evidence is viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

at ¶¶ 9-10, 15, 17). As a director, Plaintiff was a highly-placed leader, and Defendant had expectations regarding his behavior. (Doc. 31 at ¶ 21; Doc. 39 at ¶ 21). In addition, Defendant's corporate guidelines specified that "all [e]mployees are expected to act in a responsible and professional manner[, and] . . . [n]o one should be subject[ed] to bullying or abusive or harassing behavior at work." (Doc. 31 at ¶ 5; Doc. 39 at ¶ 5).

Defendant's human resources department ("HR") received three reports of inappropriate conduct by Plaintiff, in a roughly 20-month period. First, in February 2013, Tracy McFarland reported that Plaintiff had stated he would "knock [her subordinate's] ass out" if he ever told Plaintiff's subordinates what to do. (Doc. 31 at ¶ 29; Doc 39 at ¶ 29). HR counseled Plaintiff against making threatening remarks, and it suggested that he consider entering Defendant's Employee Assistance Plan ("EAP"). (Doc. 31 at ¶ 32; Doc. 39 at ¶ 32).

HR received a second report, in June 2014, from Jim Borgan. Borgan reported that Plaintiff, in response to Borgan's comment that making coffee was a "management job," yelled and pointed at Borgan in front of three other employees. (Doc. 31 at ¶¶ 33, 35; Doc. 39 at ¶¶ 33, 35). HR again counseled Plaintiff; it ordered him to participate in the EAP; it placed a formal note of discipline in Plaintiff's personnel file; and it warned that further violations of Defendant's corporate guidelines would result in more serious consequences. (Doc. 31 at ¶¶ 39, 41; Doc. 39 at ¶¶ 40, 42). Plaintiff's supervisor, Terry Hartford, also directed him to "[c]ontinue focus[ing] on treating co-workers with dignity and respect." (Doc. 31 at ¶ 42; Doc. 39 at ¶ 43).

HR received a third report, in October 2014, when employee John Trafan indicated that Plaintiff had "snapped" during a disagreement they had had a few weeks earlier; and Plaintiff subsequently had made threatening-comments about him to various co-workers. (Doc. 31 at ¶ 45; Doc. 39 at ¶ 46). According to co-workers, Plaintiff said that, if he saw Trafan in public,

he would kick his ass, punch him in the throat and crush his Adam's apple, and he would post personal information about Trafan on the internet so that his military friends could find Trafan and take care of him.[2] (Doc. 31 at ¶ 46; Fahr Confidential Mem. (Doc. 32-2) at Tab 16, ATI-000001). When Plaintiff met with HR, he admitted to having threatened to "[R]anger throat punching" Trafan. (Doc. 31 at ¶ 51; Doc. 39 at ¶ 51). HR advised Plaintiff that his behavior was unacceptable, and directed him to stay home until an investigation of the incident was completed. (Doc. 31 at ¶¶ 57-58; Doc. 39 at ¶¶ 57-58).

Following the investigation, Danielle Fahr, HR Director, recommended that Plaintiff's employment be terminated based on the reports of misconduct and Plaintiff's failure to improve despite counseling and attending the EAP. (Doc. 31 at ¶ 61; Doc. 32-2 at Tab 16, ATI-000007; Fahr Dep. (Doc. 37-8) at 72:2-13, 75:14-18). Fahr's recommendation was accepted by Hartford, HR Vice President Dan Mochnaly, and company President Bob Wetherbee. (Doc. 31 at ¶ 61; Doc. 37-8 at 75:18-19). On October 21, 2014, Fahr notified Plaintiff that his employment had been terminated. (Doc. 31 at ¶ 63). Plaintiff was 60 years old. (Doc. 31 at ¶ 12; Doc. 39 at ¶ 12).

According to Fahr, Defendant scrambled to fill Plaintiff's position, no one "per se" replaced him and his work was redistributed so that no one-person was overburdened. (Doc. 31 at ¶ 65). In response, Plaintiff initially claimed that his position was filled by an unspecified "significantly younger individual"; and, after the record on summary judgment closed, he attempted to identify two younger replacements, James Houser and then Robert Wellman, both of whom allegedly were in their early 40s. (Doc. 5 at ¶ 31; Pl.'s Aff. (Doc. 44) at ¶¶ 1-2);

---

[2] Plaintiff's own handwritten notes confirm the "throat-punch" comment, although they indicate that the statement was a "joke[]." (Doc. 39 at ¶ 47; Doc. 37-6, Ex. F).

3

but see discussion infra (rejecting Plaintiff's reliance on such evidence, which was in contravention of a prior Court-Order).

Plaintiff believes that comments by other co-workers show Defendant's preference for younger employees, (Doc. 5 at ¶¶ 18-20, 23-25),[3] and he claims to have been terminated because Defendant wanted to "lower the overall age of its workforce." (Id. at ¶¶ 53-54). Plaintiff alleges that he received more work than similarly-situated younger employees, and that he occasionally was prohibited from taking half-days of vacation so that he would be pressured to quit his job. (Id. at ¶¶ 12-15). Plaintiff admits, however, that he did not know what assignments were given to younger employees, or whether they too were prevented from taking half-day vacations. (Doc. 31 at ¶¶ 68, 74; Doc. 39 at ¶ 68; Sadowski Dep. (Doc. 32-1) at 37:16-21, 160:13-21).

Plaintiff also asserts that other employees engaged in unprofessional conduct, not resulting in termination. (Doc. 5 at ¶ 51). However, Plaintiff admits that he does not know the details of other employees' purported misconduct, or whether or how they were disciplined. (Doc. 31 at ¶¶ 97-100; Doc. 39 at ¶¶ 97-100). Further, Plaintiff does not allege that other employees who supposedly engaged in misconduct were treated better because they were younger. (Doc. 31 at ¶¶ 95-96; Doc. 39 at ¶¶ 95-96).

Plaintiff contends that Defendant never criticized his behavior until it tried to "lower the overall age of its workforce," and then he was terminated because of his age. (Doc. 5 at ¶¶ 53-54, 56). Defendant moves for summary judgment, arguing that Plaintiff has failed to establish a

---

[3] The alleged comments include: (1) Hartford's question, during an annual performance review, about Plaintiff's future plans; (2) Frank Sulava's questions about Plaintiff's age and comments about retirement; (3) CEO Richard Harshman's purported comment, in reference to a worker-demographics graph, that the company needed to employ younger salaried employees; and (4) former President Terry Dunlap's comment that he was open to using an outside computer-programmer for a project, so long as he was under the age of 60. (Doc. 31 at ¶¶ 76-77, 79, 81, 85-89, 93-94; Doc. 39 at ¶¶ 76-77, 79, 81, 85-89, 93-94).

*prima facie* case of age discrimination; and that, even if he could, Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff, which he has not shown to be pretext. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. (Doc. 30) at 7-22).

**ANALYSIS**

The ADEA makes it unlawful for an employer to terminate an individual because of his age. See 29 U.S.C. § 623(a)(1). To succeed on an ADEA claim, a plaintiff must establish by a preponderance of the evidence that age was the "but-for" cause of the adverse employment action. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009). Absent direct evidence of discrimination, as here, a plaintiff may prove an ADEA claim according to the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 804 (1973): (1) first, the plaintiff must state a *prima facie* case of discrimination; (2) then, the burden shifts to the employer to advance a legitimate, non-discriminatory reason for the adverse employment action; (3) and, finally, the plaintiff is afforded an opportunity to show that the employer's proffered reason is a pretext for discrimination. See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1008 (3d Cir. 1997).

As discussed below, Plaintiff has not met his *prima facie* burden because he has not presented evidence that raises an inference of discriminatory motive. Even had he done so, his claim fails because he has not shown that the reason offered by Defendant for his termination was pretextual. Accordingly, the Court will grant Defendant's Motion for Summary Judgment.

**A. Plaintiff Has Not Established a *Prima Facie* Case of Age Discrimination.**

To state a *prima facie* case of age discrimination, a plaintiff must show that: (1) he is at least forty years old; (2) he suffered an adverse employment decision; (3) he was qualified for

the position in question; and (4) he was replaced by a sufficiently younger person to create an inference of age discrimination. Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). Where the plaintiff is not directly replaced, the fourth element is satisfied if he provides facts which, "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (citation omitted).

Here, the first three elements are not in dispute, so the only issue is whether Plaintiff has presented evidence creating an inference of age discrimination. See Doc. 30 at 8. The Court finds that he has not.

Plaintiff initially alleged that Defendant hired a "significantly younger individual" to replace him, but HR Director Fahr testified that no one replaced him and his work was redistributed. (Doc. 5 at ¶ 31; Doc. 31 at ¶ 65). In response, Plaintiff asserted only that he "[knew] a substantially younger individual ended up with [his] job"; but he did not identify that person or offer any evidence to substantiate his claim. (Doc. 39 at ¶¶ 65, 66). Defendant replied that Plaintiff's unsupported assertion fails to establish the fourth element of a *prima facie* case. (Doc. 40 at 2).

After summary judgment briefing was completed, Plaintiff submitted an affidavit alleging that James Houser replaced him, followed by Robert Wellman, both of whom were in their early 40s. (Doc. 44 at ¶¶ 1-2).[4] "[I]f it is clear that an affidavit is offered solely for the

---

[4] After Defendant reiterated in its Reply that Plaintiff had failed to show he was replaced, Plaintiff moved to file a surreply regarding the issue of replacement. See Doc. 40 at 2; Doc. 41. Although the Court denied Plaintiff's Motion, see Order at Doc. 43, his counsel essentially ignored the Court's ruling and filed a "Supplemental Response" to Defendant's Statements of Fact, attaching an affidavit by Plaintiff claiming that he was replaced by Messrs. Houser and Wellman. See Docs. 44.

purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). The rule applies here. There is no other evidence in the record corroborating Plaintiff's assertions, and Fahr's testimony is directly contrary. Therefore, the Court finds that Plaintiff's affidavit is insufficient to establish an inference of age discrimination.

Plaintiff also has failed to demonstrate that similarly-situated younger employees were treated differently. See Willis, supra. Although Plaintiff claims that he received more work than similarly-situated younger employees, and he occasionally was prohibited from taking half-day vacations, he has admitted lacking knowledge regarding the work-assignments and vacation-practices of younger employees. (Doc. 31 at ¶¶ 68, 74; Doc. 39 at ¶ 68; Doc. 32-1 at 37:16-21, 160:13-21).

Plaintiff also argues that other employees purportedly engaged in unprofessional conduct, not leading to dismissal. Even if Plaintiff had alleged that the other employees were treated better because they were younger, which he has not, (Doc. 31 at ¶¶ 95-96; Doc. 39 at ¶¶ 95-96), he has failed to establish similar situation. "While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in 'all relevant respects.'" Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222-23 (3d Cir. 2009) (citation to quoted source omitted). "A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." Wilcher v. Postmaster Gen., 441 F. App'x 879, 882 (3d Cir. 2011). Plaintiff has failed to address these factors; and he does not know the details of other employees' purported misconduct or the resulting discipline. (Doc. 31 at ¶¶ 97-100; Doc. 39 at ¶¶ 97-100).

7

Plaintiff's "evidence" of similar situation is restricted to personal-belief, and that is insufficient under the law.

Because Plaintiff has not met his *prima facie* burden, summary judgment is warranted on that basis alone. Even assuming he could state a *prima facie* case, moreover, he has not sufficiently rebutted Defendant's legitimate, non-discriminatory reason for his termination.

### B. Defendant's Legitimate, Non-Discriminatory Reason

At the second step of McDonnell Douglas, an employer's burden of production is relatively light and is satisfied by introducing evidence which, taken as true, would permit the conclusion that there was a legitimate, non-discriminatory reason for the unfavorable employment decision. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Repeated instances of inappropriate behavior certainly may provide a legitimate, non-discriminatory reason. See Kimble v. Morgan Props., 241 F. App'x 895, 898 (3d Cir. 2007) (three reprimands for inappropriate behavior constituted legitimate reason for adverse employment decisions); Ozlek v. Potter, 259 F. App'x 417, 422 (3d Cir. 2007) (employee's inappropriate behavior was sufficient for employer to meet its burden on summary judgment).

Defendant has introduced evidence that Plaintiff was terminated because of his repeated incidences of inappropriate behavior. (Doc. 31 at ¶¶ 29, 33, 45; Doc. 39 at ¶¶ 29, 33, 46). After the first two incidents, HR counseled Plaintiff, instructed him to utilize the EAP and warned him that further violations would result in more serious consequences. (Doc. 31 at ¶¶ 32, 39, 41; Doc. 39 at ¶¶ 32, 40, 42). Plaintiff was terminated following the third incident, because of repeated incidences of misconduct and his failure to improve despite counseling and the EAP. (Doc. 31 at ¶ 61; Doc. 32-2 at Tab 16, ATI-000007; Doc. 37-8 at 72:2-13, 75:14-19). Defendant easily has satisfied its relatively light burden.

8

### C. Plaintiff Has Failed to Demonstrate that Defendant's Legitimate Reason Was Pretextual.

The burden now shifts back to Plaintiff to show that the stated reason was a pretext for age discrimination. To defeat summary judgment, a plaintiff must point to some evidence from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Fuentes, 32 F.3d at 764 (citations omitted).

Under the first prong in Fuentes, a plaintiff must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered reasons "that a reasonable factfinder could rationally find them unworthy of credence." Id. at 765. Here, Plaintiff has not produced evidence from which a reasonable factfinder could disbelieve the legitimate reason offered by Defendant. Instead, Plaintiff baldly contends that Defendant regularly tolerated "appalling behavior" by other employees, yet terminated only him. (Doc. 35 at 8).[5]

Even if Plaintiff disagrees that his conduct was sufficiently serious to warrant termination, simply arguing that the employer was wrong is not enough to survive summary judgment. See Fuentes at 765. Plaintiff also asserts, without record support, that "there [was] something suspicious" about Defendant's investigation following the third incident involving Trafan because he was not immediately terminated. (Doc. 35 at 8-9). This unsupported assertion does not contradict Defendant's reason for terminating his employment. See Willis, 808 F.3d at 647-48 (employer's proffered reason that employee was terminated because of three

---

[5] Notably, Plaintiff does not allege that other employees who supposedly engaged in misconduct were treated better because of their age. (Doc. 31 at ¶¶ 95-96; Doc. 39 at ¶¶ 95-96).

disciplinary incidents stemming from difficulties with communication and interpersonal skills was not pretext for age discrimination). Otherwise, Plaintiff has not identified evidence rendering implausible Defendant's decision, and, thus, he has failed to establish pretext under the first prong.

A plaintiff still might demonstrate pretext under the second prong in Fuentes, by presenting evidence "with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor." Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644-45 (3d Cir. 1998) (citation omitted). In this regard, pretext can be shown through evidence that: (1) the employer previously discriminated against the plaintiff; (2) the employer discriminated against others within the plaintiff's protected class; or (3) the employer treated more favorably similarly-situated employees not within the protected class. Id. at 645 (citing Fuentes, 32 F. 3d at 765).

There is no evidence that Defendant previously discriminated against Plaintiff;[6] that Defendant discriminated against other individuals over the age of 40;[7] or that similarly-situated younger employees were treated more favorably. Plaintiff's only "evidence" of pretext

---

[6] Plaintiff's own notes and emails, which he began keeping in 2001, contain speculation that his discharge was the result of a decade-long conspiracy to terminate him because of his age. (Doc. 31 at ¶¶ 108-109, 112-114; Doc. 39 at ¶¶ 109-110; 113-115). Plaintiff's subjective speculation is insufficient to establish that Defendant's reason was pretextual. See Keating v. Bucks County Water & Sewer Auth., 2000 WL 1888770, at *4 (E.D. Pa. Dec. 29, 2000) ("Averments based on mere belief, rather than personal knowledge, must be disregarded.").

[7] Plaintiff has not shown pretext by reference to a 2016 "large-scale lay-off of [Defendant's] non-union employees," some of whom were over age 40. See Doc. 35 at 6. Plaintiff has not demonstrated that the 2016-layoffs are in any way relevant, or related to, Defendant's decision to terminate him in 2014. See Catullo v. Liberty Mut. Group, Inc., 510 F. App'x 178, 181-82 (3d Cir. 2013) (agreeing with district court that statistics were insufficient to show pretext where the plaintiff had not meaningfully analyzed them); Riding v. Kaufmann's Dep't Store, 220 F. Supp. 2d 442, 459 (W.D. Pa. 2002) (the plaintiff failed to place her statistics in context and thus had failed to raise an inference of discrimination).

are comments by certain co-workers, see discussion supra at n.3, which he claims evince Defendant's preference for younger employees. However, "[s]tray remarks by non-decisionmakers or decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992). Here, the record is clear that Messrs. Sulava, Harshman and Dunlap were not decision-makers relative to Plaintiff's termination; and their comments in no way were related to the decision. Their alleged comments are insufficient to establish pretext.

Hartford was the only decision-maker to have made an allegedly age-based comment, when he asked Plaintiff about his future plans during Plaintiff's 2013 Annual Performance Review. (Doc. 31 at ¶¶ 76-77; Doc. 39 at ¶¶ 76-77). Such an inquiry was reasonable, given that the performance review process was designed to elicit discussion about an employee's career goals. (Doc. 31 at ¶ 75; Doc. 39 at ¶ 75).[8] Even were the Court to conclude otherwise, there is no evidence that Hartford's question related to Plaintiff's termination, and the utterance was temporally-remote from the decision (nine months prior). Under the circumstances, Plaintiff has not established pretext. See O'Connell v. Associated Wholesalers, Inc., 558 F. App'x 286, 292 (3d Cir. 2014) (question about employee's retirement plans deserved no significant weight because it was unrelated to his termination and was temporally remote from decision date).

In the end, a jury could not, under the applicable legal standards, reasonably conclude that Plaintiff's termination resulted from anything other than his admitted, multiple incidences of

---

[8] Even if Hartford's question could be interpreted as an inquiry into Plaintiff's retirement plans, "it is common business practice, and not impermissible discrimination, for an employer to inquire about retirement plans in anticipation of staffing needs." Willis, 808 F.3d at 649.

11

hostile and threatening behavior. Thus, and for all of the other reasons stated above, the Court hereby enters the following:

## II. ORDER

Defendant's Motion for Summary Judgment (**Doc. 29**) is **GRANTED**. A Judgment Order pursuant to Federal Rule of Civil Procedure 58 will follow.

IT IS SO ORDERED.

June 11, 2018

s\Cathy Bissoon
Cathy Bissoon
United States District Judge

cc (via ECF email notification):

All counsel of record